ORIGINAL

EDWARD H. KUBO, JR.  #2499
United States Attorney
District of Hawaii

RONALD G. JOHNSON  #4532
Assistant U.S. Attorney

WILLIAM L. SHIPLEY
Assistant U.S. Attorney
PJKK Federal Building
300 Ala Moana Blvd., Room 6-100
Honolulu, Hawaii  96850
Telephone:  541-2850
Facsimile:  541-2958
E-Mail: william.shipley@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAY 0 8 2007

at ___ o'clock and ___ min. ___ M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 07-00151 JMS |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OF PLEA AGREEMENT |
| vs. | ) | |
| | ) | |
| NORMAN GOLDSTEIN, M.D., INC., | ) | Date: May 8, 2007 |
| a Hawaii Corporation, | ) | Time: 9:30 a.m. |
| | ) | Judge: Hon. J. Michael Seabright |
| Defendant. | ) | |
| | ) | |

MEMORANDUM OF PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal

Procedure, the UNITED STATES OF AMERICA, by its attorney, EDWARD

H. KUBO, JR., the United States Attorney for the District of

Hawaii, and the Defendant, NORMAN GOLDSTEIN, M.D., INC., a Hawaii

Corporation, acting through its President, Norman Goldstein,

M.D., and its attorney and authorized representative, BROOK HART,

have agreed upon the following:

1.    The Defendant acknowledges that it has been charged by Information with violating Title 18, United States Code, Section 1347, health care fraud.

2.    The Defendant's authorized representative has read the charge contained in the Information and that charge has been fully explained to the Defendant's President by Defendant's attorney and authorized representative.

3.    The Defendant's President fully understands the nature and elements of the crime with which the Defendant has been charged.

4.    The Defendant, through its authorized representative, will enter a voluntary plea of guilty to the Count contained in the Information.  In return for the Defendant corporation entering a plea of guilty to the Information, the United States Attorney's Office agrees not to seek any additional criminal charges relating to matters of which it is aware as of the date of this plea agreement with respect to the Defendant's billing practices with HMSA.  The United States Attorney's Office also agrees not to charge Dr. Goldstein for any criminal charges relating to matters which it is aware of as of the date of this plea agreement with respect to the Defendant's billing practices with HMSA.  Defendant is pleading guilty because it is in fact guilty of the crime charged in the Information and not solely due to the agreement to not charge Dr. Goldstein personally.

2

5.   The Defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the public record.

6.   The Defendant enters this plea because it is in fact guilty of the crime of health care fraud set forth in the Information to which it is pleading guilty, and agrees that this plea is voluntary and not the result of force or threats.

7.   The Defendant understands that the maximum penalties for the offense of health care fraud to which it is pleading guilty include:

a.   A fine of not more than $500,000 or twice the gross pecuniary gain realized by the Defendant from the offense, whichever is greater.

b.   Restitution pursuant to Title 18, United States Code, Section 3663A(a) to all persons directly harmed by the Defendant's criminal conduct in the course of the scheme to defraud in an amount to be determined by the Court at sentencing using the recommendation of the United States Probation Officer based on information obtained by the United States Probation Officer or provided by the United States Attorney's Office, but in an aggregate amount not to exceed $500,000.  The Defendant is entitled to a credit against any such restitution order for amounts already paid to any victim.

3

In addition, the Court must impose a $100 special assessment as to the count to which the Defendant is pleading guilty, for a total of $100.00. Defendant agrees to pay $100 for the count to which it is pleading guilty to the District Court's Clerk's Office, to be credited to said special assessments, before the commencement of any portion of sentencing. Defendant acknowledges that failure to make such full advance payment in a form and manner acceptable to the prosecution will allow, though not require, the prosecution to withdraw from this agreement.

8.   Defendant admits the following facts and agrees that they are not a detailed recitation, but merely an outline of what happened in relation to the charge to which Defendant is pleading guilty, and that these facts establish each element of the offense in the Information to which the Defendant is pleading guilty:

a.   Between on or about January 1, 1997, and December 31, 2000, in the State and District of Hawaii, the Defendant operated as a medical services provider for persons who were policy holders and plan members under insurance policies issued by Hawaii Medical Services Association ("HMSA"), a health care benefit program issuing health and medical insurance policies to residents of the State of Hawaii.

b.   HMSA compensated medical service providers such as the Defendant for services rendered to policy holders and

4

plan members according to a reimbursement schedule established by
HMSA and agreed to by medical service providers.  The HMSA
reimbursement schedule listed reimbursement rates corresponding
to treatment codes from the Common Procedure Terminology manual
(CPT) created by the American Medical Association, which
associates common medical procedures with a numerical identifier
for record-keeping and billing purposes.

      c.  HMSA's reimbursement schedule included
compensation rates for CPT billing code 10040, the performance of
"acne surgery", and CPT billing code 17340, the performance of
"cryotherapy" - the application of liquid nitrogen to treat acne
and other conditions.

      d.  From January 1, 1997, to December 31, 2000,
the Defendant submitted billings for reimbursement under CPT Code
10040, representing that it had treated HMSA policy holders and
plan members with acne surgery, when those policy holders and
plan members had actually been administered cryotherapy, the
application of liquid nitrogen with an aerosol spray or other
device, for which HMSA should have been billed under CPT Code
17340.

      e.  Under the HMSA reimbursement schedule, to be
reimbursed for the performance of "acne surgery" under CPT Code
10040 required opening or puncturing the patient's skin in the
treatment of acne.  This procedure was only occasionally employed

as a method of treatment for acne in the Defendant's medical
practice.

       f.   One of the most common medical procedures
performed by the Defendant was cryotherapy spray.  It was common
for a patient seeking treatment from the Defendant for acne to
have an initial examination and consultation with a physician,
followed by a regular course of treatment involving a series of
cryotherapy application sessions on a bi-weekly or monthly basis
until the condition resolved.  These follow-up treatments were
frequently scheduled to be performed by the Defendant's non-
physician medical staff, often without the involvement of a
physician, and a separate appointment schedule was maintained by
the Defendant's office staff for patients needing such follow-up
treatments.  Separate patient sign-in sheets were used for
patients who were scheduled for cryotherapy.

       g.  For the period January 1, 1997, to December
31, 2000, the Defendant billed HMSA under the acne surgery code
10040 when cryotherapy spray was the medical treatment provided
by a non-physician member of the Defendant's medical staff, and
when the Defendant knew that the appropriate billing code for
such treatment was CPT Code 17340.  During this period, the HMSA
maximum reimbursement rate for medical services billed under CPT
Code 10040 was $43.60, whereas the maximum reimbursement rate for
medical services billed under CPT Code 17340 was $34.30, a

billing differential of up to $9.30 in favor of the Defendant for each treatment mis-identified in the billing of HMSA.  For the period January 1, 1997, to December 31, 2000, the Defendant billed HMSA for approximately 20,000 acne surgery procedures when the HMSA policy holder or plan member had actually received cryotherapy, resulting in an overpayment to the Defendant by HMSA of $178,181.60.

       h.   On January 1, 2001, HMSA adjusted its reimbursement schedule for both CPT Codes 10040 and 17340, "acne surgery" and "cryotherapy" respectively.  The reimbursement rate for acne surgery remained at $43.60, and the reimbursement rate for cryotherapy increased to $69.90.  Upon the effective date of this change, the Defendant immediately began billing HMSA for cryotherapy treatments under CPT Code 17340 in order to realize the $35.60 higher reimbursement rate then provided for cryotherapy.  This change in the billing was made even though the patients were receiving the same treatment services they had received before HMSA adjusted the reimbursement rates. Beginning on January 1, 2001, nearly all treatment services involving cryotherapy were correctly billed under CPT Code 17340, with only a small percentage of cryotherapy services billed under the lesser reimbursement rate for Code 10040.

       9.   Pursuant to CrimLR32.1(a) of the Local Rules of the United States District Court for the District of Hawaii, the

parties agree that the charge to which the Defendant is pleading guilty adequately reflects the seriousness of the actual offense behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing.

10.   This plea agreement is made pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, which authorizes the parties to agree upon a specific sentence as an appropriate disposition of the case.   The parties agree that the sentence imposed by the Court shall be as follows:

a.   Five (5) years of probation on the organization;

b.   A fine of $356,363.20, to be paid at the time of sentencing;

c.   A mandatory special assessment of $100.

11.   Pursuant to CrimLR 32.1(b) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.4 of the Sentencing Guidelines, the parties stipulate to the following facts for the purpose of the sentencing of Defendant in connection with this matter:

a.   The loss to HMSA from the billing irregularities is $178,181.60.

b.   Pursuant to the binding arbitration provision in the provider agreement between HMSA and the Defendant, the Defendant has already reimbursed HMSA for this loss.

12.   Pursuant to Section 6B1.4 of the Sentencing Guidelines, the parties agree that no facts are in dispute for the purpose of sentencing the Defendant in connection with this matter.

13.   The Defendant expressly waives any claim of defect in the language of the charging document, specifically, that the sole count in the charging document is duplicitous in that it combines within a single count multiple acts of criminal conduct which might appropriately be charged in numerous separate counts. The Defendant agrees that the language of the charging document sufficiently apprises its authorized representative of the nature and extent of the criminal conduct alleged, and no further notice or explanation of the specific conduct is necessary. Defendant understands and acknowledges that, by not charging each individual act in separate counts in the charging document, the United States and the Defendant are able to describe the Defendant's criminal conduct in the single count to which the Defendant is pleading guilty.

14.   The Defendant is aware that it has the right to appeal the sentence imposed under 18 U.S.C. § 3742(a). Defendant knowingly waives the right to appeal, except as indicated in subparagraph "b" below, any sentence within the maximum provided in the statute of conviction or the manner in which that sentence was determined on any of the grounds set forth in Section 3742,

9

or on any ground whatever, in exchange for the concessions made by the prosecution in this plea agreement.

      a.   The Defendant also waives its right to challenge its sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C § 2255, except that Defendant may make such a challenge (1) as indicated in subparagraph "b" below, or (2) based on a claim of ineffective assistance of counsel.

      b.   If the Court imposes a sentence greater than specified in 18 U.S.C. Sec. 3571(c) or (d), the Defendant retains the right to appeal the portion of its sentence greater than specified in that statute and the manner in which that portion was determined under Section 3742 and to challenge that portion of its sentence in a collateral attack.

      c.   The prosecution retains its right to appeal the sentence and the manner in which it was determined on any of the grounds stated in 18 U.S.C. § 3742(b).

      15.  The Defendant understands that the District Court in imposing sentence will consider the provisions of the Sentencing Guidelines, which are advisory.  The Defendant agrees that there is no promise or guarantee of the applicability or nonapplicability of any Guideline or any portion thereof, notwithstanding any representations or predictions from any source.

10

16.   The Defendant understands that pursuant to Guideline 6B1.1(c), this Agreement cannot be accepted or rejected by the Court until there has been an opportunity by the Court to consider a presentence report, unless the Court decides that a presentence report is unnecessary pursuant to Guideline 6A1.1. The Defendant understands that the Court will not accept an agreement unless the Court determines that the charge adequately reflects the seriousness of the actual offense behavior, and accepting the agreement will not undermine the statutory purposes of sentencing.

17.   Defendant understands that by pleading guilty it surrenders certain rights, including the following:

a.   If Defendant persisted in a plea of not guilty to the charge it would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by a judge sitting without a jury. The Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the Defendant, the prosecution and the judge all must agree that the trial be conducted by the judge without a jury.

b.   If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and its attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other

11

disqualification is shown, or without cause by exercising
peremptory challenges.   The jury would have to agree unanimously
before it could return a verdict of either guilty or not guilty.
The jury would be instructed that the Defendant is presumed
innocent, and that it could not convict unless, after hearing all
the evidence, it was persuaded of Defendant's guilt beyond a
reasonable doubt.

      c.   If the trial is held by a judge without a
jury, the judge would find the facts and determine, after hearing
all the evidence, whether or not he or she was persuaded of the
Defendant's guilt beyond a reasonable doubt.

      d.   At a trial, whether by a jury or a judge, the
prosecution would be required to present its witnesses and other
evidence against the Defendant.   Defendant would be able to
confront those prosecution witnesses and its attorney would be
able to cross-examine them.   In turn, Defendant could present
witnesses and other evidence on its own behalf.   If the witnesses
for the Defendant would not appear voluntarily, it could require
their attendance through the subpoena power of the Court.

      18.   Defendant understands that by pleading guilty, it
is waiving all of the rights set forth in the preceding
paragraph.   Defendant's attorney has explained those rights, and
the consequences of the waiver of those rights, to the
Defendant's President.

19.   The Defendant and its attorney acknowledge that no threats, promises, or representations have been made, nor agreement reached, other than those set forth in this Agreement, to induce Defendant to plead guilty.

20.   It is further agreed that should the Defendant's conviction following the Defendant's guilty plea be vacated or set aside for any reason, then any prosecution that is not time-barred by the applicable statute of limitation, including as extended by various agreements of the parties hereto, on the date of the signing of this Agreement may be commenced or reinstated against the Defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution.   It is the intent of the Defendant pursuant to this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date this Agreement is signed.

21.   Should the Court refuse to accept any provision of this Rule 11(c)(1)(C) Agreement, the parties agree and understand that Rule 11(c)(5) of the Federal Rules of Criminal Procedure applies to the Defendant's rights.   The parties further agree that should the Court refuse to accept any provision of this Rule 11(c)(1)(C) Agreement, the prosecution retains at its option and in its sole discretion, the right to withdraw from the Agreement.

13

The Court's rejection of any stipulation between the parties does not constitute a refusal to accept this Agreement since the Court is expressly not bound by stipulations between the parties.

22.   Defendant understands that the prosecution will apprise the Court and, if a presentence report is required, the United States Probation Office, of the nature, scope and extent of Defendant's conduct regarding the charges, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

DATED:   Honolulu, Hawaii, _May 2, 2007_____.

AGREED:

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii


_____
RONALD G. JOHNSON
Assistant U.S. Attorney


_____
WILLIAM L. SHIPLEY
Assistant U.S. Attorney

NORMAN GOLDSTEIN, M.D., INC.,
a Hawaii Corporation
Defendant


By _____
Norman Goldstein, M.D.,
President


_____
BROOK HART
Attorney and Authorized
Representative for Defendant

14