IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 07-00151 JMS |
| | ) | |
| Plaintiff, | ) | ORDER REGARDING |
| | ) | RESTITUTION REQUEST BY |
| vs. | ) | HAWAII MEDICAL SERVICE |
| | ) | ASSOCIATION |
| NORMAN GOLDSTEIN, M.D., INC., | ) | |
| a Hawaii Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## ORDER REGARDING RESTITUTION REQUEST BY HAWAII MEDICAL SERVICE ASSOCIATION

### I. INTRODUCTION

Before the court is Hawaii Medical Service Association's ("HMSA") request for restitution pursuant to the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A ("MVRA"), from corporate Defendant Norman Goldstein, M.D., Inc. ("Defendant" or "NG, Inc.") for HMSA's attorneys' fees and costs accrued during an arbitration with NG, Inc. For the following reasons, the Court DENIES HMSA's request.

///

///

///

## II. BACKGROUND

**A.     Factual Background**

On May 8, 2007, NG, Inc. entered a plea of guilty, pursuant to a plea agreement, to an Information charging it with one count of health care fraud in violation of 18 U.S.C. § 1347.  The relevant facts underlying the Information, and as admitted by NG, Inc. in the Memorandum of Plea Agreement ("Plea Memo"), are as follows: From January 1, 1997 to December 31, 2000, NG, Inc. submitted billings for reimbursement to HMSA,[1] representing that it had treated HMSA patients with acne surgery, when in fact these patients were treated with cryotherapy.  Plea Memo ¶ 8(d).  The HMSA maximum reimbursement rate for acne surgery was $43.60, while the maximum reimbursement rate for cryotherapy was $34.30.  *Id.* ¶ 8(g).  NG, Inc. therefore received up to $9.30 more for each mis-identified acne treatment, which resulted in HMSA overpaying NG, Inc. a total of $178,181.60 over this period.[2]  *Id.*

HMSA uncovered NG, Inc.'s overcharging in March 2002, and demanded reimbursement for the $178,181.60.  Carson Decl. ¶¶ 6-11.  NG, Inc.

---

[1] HMSA is a "health care benefit program issuing health and medical insurance policies to residents of the State of Hawaii," and NG, Inc. "operated as a medical services provider for persons who were policy holders and plan members under insurance policies issued by [HMSA]."  Plea Memo ¶ 8(a).

[2] NG, Inc. improperly billed a total of 23,062 claims to HMSA.  Jouxson Decl. ¶ 5, n.3.

and HMSA then engaged in a protracted dispute process which included NG, Inc.'s administrative appeal of HMSA's decision, legal wrangling over the composition of the review committee, administrative review, and arbitration.[3]  On September 13, 2005, the arbitrator issued a Final Award finding that NG, Inc. was overpaid $178,181.60,[4] and that NG, Inc. must pay the full amount of the arbitrator fees for the reimbursement dispute.  *Id.* ¶ 56.  The arbitrator declined, however, to require NG, Inc. to pay the full amount of arbitrator fees regarding the dispute over the composition of an administrative appeal committee.  *Id.*

HMSA incurred $208,994.76 in attorneys' fees and costs from the Honolulu law firm Alston Hunt Floyd & Ing, who represented HMSA in resolving this overbilling dispute.  *Id.* ¶ 3; HMSA Ex. A.  HMSA seeks restitution of this amount, and the $7,578.08 HMSA paid for the composition dispute phase of the arbitration.  Carson Decl. ¶ 43; HMSA Ex. B.

**B.     Procedural Background**

Prior to entering its plea, NG, Inc. recognized that restitution may be an issue for sentencing.  On May 3, 2007, NG, Inc. filed a Memorandum in

---

[3] Both HMSA and NG, Inc. describe their dispute in detailed declarations submitted to the court.  While the court has reviewed all of the submitted materials, recitation of each step in their dispute in not necessary for the restitution determination.

[4] NG, Inc. fully paid this amount to HMSA by July 2005, and the instant dispute does not concern the repayment of this $178,181.60 to HMSA.

Support of Dispensing with Preparation of a Presentence Report ("NG, Inc. Presentence Memo"), in which it identified that "the only issue that may potentially arise concerning sentencing in this case would be a request for restitution by [HMSA] for its attorneys' fees and costs in connection with the civil arbitration proceeding between it and the Defendant in this case . . . ."  NG, Inc. Presentence Memo 3.  The court subsequently ordered that a presentence report be prepared, and HMSA filed a July 23, 2007 Memorandum in Support of Order of Restitution Under Mandatory Victims Restitution Act, seeking restitution of its fees and costs, and restitution for HMSA members.  On October 1, 2007, NG, Inc. filed its Sentencing Statement ("NG, Inc. Sentencing Statement") and again argued against HMSA's request for restitution.

    The court held a sentencing hearing on January 14, 2008.  During this hearing, the parties argued the merits of both HMSA's request for restitution of its attorneys' fees and costs, and restitution for HMSA members.  Because the government had not previously provided briefing on restitution, and none of the parties had adequately addressed the feasibility of determining HMSA member restitution, the court allowed further briefing by all the parties.  On February 22, 2008, the government submitted a Memorandum Regarding Restitution ("Gov't Memo"), taking the position that (1) HMSA is not entitled to its attorneys' fees

and costs related to its arbitration with NG, Inc.; (2) restitution for HMSA members is feasible; and (3) HMSA should receive restitution of its costs in determining HMSA member overpayments.  HMSA submitted a Supplemental Memorandum on February 25, 2008, and a Reply Memorandum to the Government's Memorandum on February 28, 2008.  On March 4, 2008, NG, Inc. submitted a Supplemental Sentencing Statement indicating that the parties have reached a tentative agreement on all of the restitution issues, except for HMSA's attorneys' fees and costs related to its arbitration with NG, Inc.  On March 7, 2008, the government submitted a Sur-Reply to HMSA's Reply Memorandum.  On March 10, 2008, the court held a status conference, and allowed further argument regarding restitution of HMSA's attorneys' fees and costs related to its arbitration with NG, Inc.[5]

### III.  LEGAL STANDARD

The MVRA requires a court to order a defendant convicted of an offense involving fraud or deceit to make restitution to the victim.  18 U.S.C.

---

[5] This Order is limited to HMSA's request for restitution related to its arbitration with NG, Inc.  As mentioned above, the parties determined that restitution to HMSA members was feasible.  Further, during the March 10, 2008 status conference, the court raised, and the parties agreed, that HMSA may be able to receive restitution of its costs accrued in participating in the official investigation and/or prosecution of NG, Inc.

§ 3663A(a)(1);[6] *see also United States v. Moreland*, 509 F.3d 1201, 1222 (9th Cir. 2007) ("The MVRA makes restitution mandatory, without regard to a defendant's economic situation, to identifiable victims who have suffered physical injury or pecuniary loss from particular crimes, including offenses involving fraud or deceit.").

Section 3663A(b) states that an order of restitution shall require a defendant to:

> (1) in the case of an offense resulting in damage to or loss or destruction of property of a victim of the offense--
> (A) return the property to the owner of the property or someone designated by the owner; [and]
> . . .
> (4) in any case, reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.

"Restitution can only include losses directly resulting from a defendant's offense and, therefore, a restitution order must be based on losses directly resulting from the defendant's criminal conduct." *United States v. Cummings*, 281 F.3d 1046, 1052 (9th Cir. 2002) (citation and quotation signals omitted); *see also United States v. Barany*, 884 F.2d 1255, 1260 (9th Cir. 1989) ("The amount of restitution

---

[6] A "'victim' means a person directly and proximately harmed as a result of the commission of an offense . . . ." 18 U.S.C. § 3663A(a)(2).

must be definite and limited by the amount actually lost by the victims." (citation and quotation omitted)); S. Rep. No. 104-179, at 19 (1995), *reprinted in* 1996 U.S.C.C.A.N. 924, 932 ("The committee believes that losses in which the amount of the victim's losses are speculative, or in which the victim's loss is not clearly causally linked to the offense, should not be subject to mandatory restitution.").

## IV. ANALYSIS

The parties do not dispute that HMSA is a victim under the MVRA. Rather, they dispute only whether HMSA's arbitration fees and costs are subject to restitution under the MVRA.[7] HMSA argues that its arbitration fees and costs are "expenses incurred during participation in the investigation or prosecution" of NG, Inc.'s offense, and repayment is necessary to make HMSA whole. *See* HMSA Memo 9. NG, Inc. counters that HMSA's arbitration fees and costs are not proper restitution because they are not *direct* losses from NG, Inc.'s offense conduct. NG, Inc. Sentencing Statement 19; *see also* Gov't Memo 9-13 (arguing that HMSA's attorneys' fees are consequential damages and not restitution). The court agrees that HMSA's arbitration fees and costs are not losses directly

---

[7] The government suggests that HMSA does not currently have standing because it seeks restitution pursuant to the MVRA, but it is the Crime Victims' Rights Act, 18 U.S.C. § 3771 ("CVRA"), that provides standing. Gov't Memo 9. While the CVRA recognizes HMSA's right to restitution "as provided in law," the MVRA is the specific "law" that describes HMSA's rights to restitution. As a victim, HMSA has standing to seek restitution, and need not specify the specific statute that grants it standing.

resulting from NG, Inc.'s offense conduct.[8]

While "[t]his circuit has adopted a *broad* view of the restitution authorization for investigation costs," an award of restitution must be "a direct and foreseeable result of the defendant's wrongful conduct." *United States v. Gordon*, 393 F.3d 1044, 1056-57 (9th Cir. 2004) (citations, quotation signals, and alteration omitted). At the time that HMSA began the dispute resolution process, it had already determined that NG, Inc. was overpaid $178,181.60.[9] *See* Carson Decl. ¶ 6. HMSA's attorneys' fees and costs in arbitration were therefore not part of any investigation to determine the extent of NG, Inc.'s misconduct and HMSA's losses. Rather, HMSA incurred these costs in attempting to collect the overpayment NG, Inc. received. Such costs are not "expenses incurred during participation in the investigation or prosecution of the offense," and do not qualify for restitution. *See* 18 U.S.C. § 3663A(b)(4); *United States v. Havens*, 424 F.3d 535, 539 (7th Cir. 2005) (finding that costs associated with victim's lawsuit to recover damages for identity theft are not recoverable "because they do not reflect

---

[8] Because the court finds that HMSA's arbitration fees and costs are not a direct result of NG, Inc.'s offense conduct, the court does not address NG, Inc.'s other arguments that awarding restitution would give HMSA "overwhelming leverage" in its contracts, and allowing recovery would subvert the binding terms of their participating provider agreement. *See* NG, Inc. Sentencing Statement 21 & 30.

[9] HMSA has not sought restitution relating to its initial determination of the amount that NG, Inc. was overpaid, and has provided no information regarding such fees and/or costs.

the losses she suffered as a direct result of [defendant's] conduct"); *United States v. Bogart*, 490 F. Supp. 2d 885, 895-96 (S.D. Ohio 2007) (noting that costs incurred by victim in pursuing a civil judgment for defendant's fraudulent conduct which is also the basis of the criminal action would not be recoverable); *see also Barany*, 884 F.2d at 1261 (finding that attorneys' fees accrued by victim/insurance company in civil action were "too remote" from defendant's criminal conduct to serve as a basis for restitution).

Further, the fact that arbitration would not have occurred but for NG, Inc.'s fraud, or that the same fraudulent activity was the basis of both the arbitration dispute and the offense conduct, does not make HMSA's fees and costs the "direct and foreseeable result" of NG, Inc.'s conduct. The entire overpayment dispute, while relating to NG, Inc.'s fraud on HMSA, is nonetheless separate from NG, Inc.'s offense conduct. *See* HMSA Memo 18 (conceding that "the Indictment in this case does not identify [NG, Inc.'s] continuing course of fraudulent conduct in the arbitration as a part of the scheme to defraud"); Plea Memo ¶ 8(d) (describing that NG, Inc.'s fraudulent billing occurred from January 1, 1997 to December 31, 2000). Stated differently, NG, Inc.'s conduct during the arbitration

is not part of the acts constituting its health care fraud.[10]  *Cf. United States v. DeGeorge*, 380 F.3d 1203, 1221 (9th Cir. 2004) ("DeGeorge was convicted of conspiracy that included his perjury and other conduct during the civil trial as overt acts.  Thus, the insurance company's expenses in the civil trial were *directly*, not tangentially, related to DeGeorge's offenses.").

That HMSA's arbitration fees and costs are distinct from any investigation costs distinguishes this case from *Gordon*.  In *Gordon*, the Ninth Circuit upheld a restitution award that included the corporate victim's investigation costs in determining the defendant's securities fraud and embezzlement from the victim.  *Gordon*, 393 F.3d at 1057.  The victim incurred these costs "in aid of the [criminal] proceedings" by responding to five grand jury subpoenas and government requests to analyze "vast amounts" of documentation.  *Id.*  The court concluded that restitution was proper because the victim "cannot be faulted for making a concerted effort to pick up [defendant's] trail and identify all the assets he took amid everything he worked on."  *Id.*  In contrast here, HMSA did not incur the fees and costs it now seeks in *investigating* NG, Inc.'s

---

[10] For this reason, the court also rejects HMSA's argument that NG, Inc.'s conduct during arbitration was a "continuation of his scheme to defraud HMSA" and "constituted health care fraud."  *See* HMSA Memo 12, 15.  Further, nothing in the record suggests that Norman Goldstein or NG, Inc. was under criminal investigation during the arbitration period.

wrongdoing, but rather in seeking to recoup overpayments.

HMSA's reliance on *Cummings* is also misplaced. In *Cummings*, the defendant pled guilty to violating the International Parental Kidnapping Crime Act ("IPKCA"), and the court granted restitution to the children's mother for her attorneys' fees in state and international civil proceedings to recover custody. *Cummings*, 281 F.3d at 1048. In affirming this restitution award, the Ninth Circuit found that these expenses "related to the government's investigation and prosecution of [Defendant] for wrongfully retaining his children in a foreign country" and that the relief the mother sought in those actions "was closely tied to this criminal prosecution." *Id.* at 1052. Indeed, the victim was following the procedures "of first choice" specified by IPKCA for return of her children. *Id.* at 1053; *see also Bogart*, 490 F. Supp. 2d at 893 (discussing that *Cummings* "only held that a victim may recover her attorneys' fees in connection with the 'investigation and prosecution' of the defendant").

Unlike *Cummings*, and as explained above, HMSA's arbitration with NG, Inc. was wholly separate from its offense conduct. *Cf. Cummings*, 281 F.3d at 1053 (contrasting facts from *Barany*, where insurance company's expenditures in defending a civil suit were "only tangentially related to defendant's offenses" and not the basis for restitution). The arbitration was not a necessary step for

11

HMSA in the health care fraud prosecution.[11] Thus, the court holds that HMSA cannot recover its arbitration fees and costs under the MVRA.[12]

///

///

///

///

///

///

---

[11] HMSA also argues that its arbitration fees and costs can be considered "'property damage' under § 3663A(b)(1), because the amounts expended in the arbitration were HMSA funds derived from member dues, and would otherwise have been available to be spent on behalf of members." HMSA Memo 9-10. The court finds that the fees and costs HMSA accrued in arbitration are not property subject to restitution for the same reasons that such fees and costs are not "expenses incurred during participation in the investigation or prosecution of the offense." 18 U.S.C. § 3663A(b)(4). However HMSA categorizes them, these fees and costs are not "a direct and foreseeable result of the defendant's wrongful conduct." *United States v. Gordon*, 393 F.3d 1044, 1056-57 (9th Cir. 2004).

[12] Based on the plain language of the MVRA, restitution under § 3663A(b)(4) arguably covers only those expenses incurred in participating in an *official* investigation or proceeding. *See* 18 U.S.C. § 3663A(b)(4) (stating that the victim shall be reimbursed for "expenses incurred during participation in *the* investigation or prosecution of *the* offense or attendance at proceedings related to the offense" (emphasis added)); *see also United States v. Donaby*, 349 F.3d 1046, 1055 (7th Cir. 2003) ("Congress sought to make clear that the costs to private citizens of testifying in a criminal case were direct and foreseeable consequences of crime."). Such reading of the MVRA still would not provide recovery of HMSA's arbitration fees and costs, although fees expended to uncover the scope of the fraud may be recoverable as "property damage" under § 3663A(b)(1). *See United States v. Scott*, 405 F.3d 615, 620 (7th Cir. 2005) (describing that audit expenses incurred by victims to determine how much defendant had stolen from them are subject to restitution, whereas attorneys' fees "are not classified as damages").

## V. **CONCLUSION**

The court therefore DENIES HMSA's request for restitution pursuant to the MVRA for HMSA's attorneys' fees and costs accrued during the arbitration with NG, Inc.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 11, 2008.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*United States v. Norman Goldstein, M.D., Inc.*, Cr. No. 07-00151 JMS, Order Regarding Restitution Request by Hawaii Medical Service Association